[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 15-10421

————————————————

D.C. Docket No. 2:12-cv-03738-AKK

SAM A. VIRCIGLIO,

Plaintiff–Appellee,

versus

WORK TRAIN STAFFING LLC,
WORK TRAIN USA LLC,
FRANK PETRUSNEK,

Defendants–Appellants.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama

————————————————

(December 30, 2016)

Before ROSENBAUM and JULIE CARNES, Circuit Judges, and GOLDBERG,[*]
Judge.

———————————————

[*] Honorable Richard W. Goldberg, United States Court of International Trade, sitting by
designation.

JULIE CARNES, Circuit Judge:

Plaintiff Sam Virciglio was fired from his job and thereafter sued his

employer for retaliation, in violation of the Age Discrimination in Employment

Act ("ADEA") and Title VII, and for failure to notify Plaintiff of his rights under

the Comprehensive Omnibus Budget Reconciliation Act ("COBRA").  The district

court granted summary judgment to Plaintiff on the COBRA claim and a jury

found for him on the retaliation claim.  Thereafter, the district court entered

judgment consistent with its earlier ruling and with the jury's verdict.  Defendants

now appeal this judgment.  After careful review of the record, and with the benefit

of oral argument, we affirm.

## BACKGROUND

### I.    Factual Background

This case arises out of Plaintiff's employment with and subsequent

termination from Defendants Work Train USA and Work Train Staffing

(collectively, "Work Train" or "Defendants").[1]  Work Train is in the staffing

business.  It earns revenues by hiring staffing employees whom it then uses to

provide services to Work Train clients and by claiming federal tax credits for its

hiring of these staffing employees.  Defendant Petrusnek is one of the owners of

---

[1]  Work Train USA and Work Train Staffing are related entities.  Plaintiff was hired to work for Work Train USA.  He was ostensibly transferred to the employment of Work Train Staffing in February 2011, but there is evidence that Work Train USA continued to provide certain benefits to Plaintiff, and likewise to benefit from his employment.

Work Train.  He hired Plaintiff in September 2010 as a sales manager for Work Train.  In addition to a salary, Plaintiff's compensation included employer-paid health insurance with family coverage through Blue Cross Blue Shield.

According to Defendants, Plaintiff failed to meet sales expectations during his first year of employment.  As a result, in November 2011, Defendants changed Plaintiff's compensation to a commission-based system and informed him that he would have to start paying the full premium for his health insurance in January 2012.  Defendants also assigned Plaintiff a monthly sales quota, effective immediately.

Plaintiff failed to meet his December 2011 sales quota, and he took leave during the last few days of that month to spend time with his wife, who was terminally ill and being treated for cancer.  When Plaintiff returned to work on January 3, 2012, Petrusnek met with him to discuss his performance and to determine whether Plaintiff was anticipating any upcoming sales.  Plaintiff claims that he gave Petrusnek a letter during the January 3 meeting accusing Defendants of age and gender discrimination.

On January 4, 2012, the day after his meeting with Petrusnek, Plaintiff filed an EEOC charge alleging gender discrimination.  Two days later, on January 6, 2012, Petrusnek met with Plaintiff again and this time fired him, allegedly for performance reasons.  Construing the facts in favor of Plaintiff, Petrusnek had by

that date received Plaintiff's letter alleging age and gender discrimination, but was not yet aware of Plaintiff's EEOC charge.

During this January 6 termination meeting, Petrusnek informed Plaintiff that part of his January 2012 insurance premium had been deducted from his final paycheck, and that Defendants would pay the remaining portion. Consistent with this information, Plaintiff's final paycheck included a $467 deduction for "Health." Based on this conversation with Petrusnek, Plaintiff therefore believed he had insurance coverage through January 2012, and that he did not need to obtain alternative coverage until February 2012. Defendants never notified Plaintiff, either during the January 6 meeting or at any other time prior to this lawsuit, of his right under COBRA to continuation of coverage.

Defendants received notice of Plaintiff's EEOC charge in mid-January 2012.[2] A few weeks later, Petrusnek contacted Blue Cross and requested that Plaintiff's health insurance be canceled retroactive to January 1, 2012. Petrusnek's request was honored, and Work Train received a refund of $1,904 from Blue Cross for Plaintiff's first quarter premium. Defendants did not offer to reimburse Plaintiff for the $476 part of the premium that had been deducted from his final paycheck until after Plaintiff filed this lawsuit.

---

[2] Plaintiff subsequently filed two additional EEOC charges, alleging gender, age, and disability discrimination and retaliation. The second charge was filed on January 31, 2012. It is likely, but not conclusively established by the record, that Petrusnek received notice of the second charge before he retroactively canceled Plaintiff's insurance. Plaintiff's third charge was filed on March 13, 2012, after his insurance had been canceled.

4

Plaintiff's wife died in March 2012.  The following month, Plaintiff learned that Defendants had retroactively canceled his insurance, which meant he had no medical coverage for the month of January 2012.  Although Plaintiff had purchased alternative insurance that began on February 1, 2012, he had incurred in January more than $50,000 in medical expenses, primarily for his wife's cancer treatments.  These expenses had been initially paid by Blue Cross, but it subsequently rebilled Plaintiff for payment and ultimately sent the billing to collections.  At some point during this litigation, Defendants requested reinstatement of Plaintiff's health insurance for January 2012, and the bills were then paid.

## II.    Procedural History

After his termination and subsequent discovery of the retroactive cancellation of his insurance, Plaintiff filed this lawsuit alleging:  (1) a violation of his COBRA notice rights, (2) age and gender discrimination in violation of the ADEA and Title VII, (3) retaliation in violation of the same statutes; and (4) fraud and misrepresentation in violation of various state laws.  Following discovery, the parties filed cross-motions for summary judgment.

The district court granted summary judgment to Defendants on Plaintiff's age and gender discrimination claims, but found that questions of fact precluded summary judgment on Plaintiff's retaliation claims, as well as on some of his state

5

law claims.  With respect to the COBRA claim, the court granted summary judgment to Plaintiff, finding as a matter of law that:  (1) Defendants did not qualify for the small-employer exception to COBRA; (2) Plaintiff's termination was a qualifying event that triggered COBRA's notice requirement; (3) Defendants failed to provide the required notice; and (4) Defendants did so in bad faith, warranting a penalty under COBRA.  The court advised Defendants that it would determine at trial the amount of the penalty to be imposed.

The district court subsequently held a jury trial on Plaintiff's remaining claims.  At the close of Plaintiff's evidence, Defendants moved for judgment as a matter of law, arguing that there was insufficient evidence to support those claims and further that Defendant Work Train USA was not subject to any liability because it was not Plaintiff's employer at the time of his termination.  Plaintiff did not oppose the motion as to his state law claims, and the district court dismissed those claims.  The court, however, declined to enter judgment as to the other claims, and it submitted the case to the jury.

The jury returned a verdict for Plaintiff based on Defendants' retaliatory cancellation of Plaintiff's insurance and awarded him $75,000 in compensatory damages.  The jury also found that the retaliation was willful under the ADEA, resulting in an additional $75,000 award to Plaintiff.  Finally, it awarded $175,000 in punitive damages under Title VII.  For its part, and in accordance with its earlier

grant of summary judgment to Plaintiff on the COBRA notice claim, the district court imposed a $3,300 penalty based on that claim.[3]  Thus, consistent with the above verdict and its own ruling, the court entered a judgment that incorporated the jury's award of damages against Work Train in the amount of $325,000, in addition to the court's award of a penalty against Defendants Work Train and Petrusnek in the amount of $3,300 for the COBRA notice claim.

Defendants appeal the judgment entered against them.  They argue that the district court erred by:  (1) allowing Plaintiff to amend his complaint after the scheduling order deadline to add a COBRA notice claim, (2) denying Defendants' *Batson* challenge during jury selection, (3) denying Defendants' motion for judgment as a matter of law as to Plaintiff's retaliatory cancellation claim and as to Defendant Work Train USA's liability on that claim, (4) refusing to give Defendants' requested jury instruction concerning "but for" causation, and (5) entering judgment in favor of Plaintiff on his COBRA notice claim.

## DISCUSSION

### I.   COBRA Amendment

The scheduling order set a deadline of May 30, 2013 for amending the pleadings.  On June 14, 2013, which was about two weeks after the deadline

---

[3]  Under 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1, COBRA penalties are imposed at the discretion of the court, with a potential penalty of up to $110 for every day the statute was violated.

7

expired, Plaintiff filed a motion for leave to amend the complaint to add the COBRA notice claim on which he ultimately prevailed at summary judgment. Defendants argue that the district court erred by granting Plaintiff's motion and allowing the amendment.

Federal Rule 16(b) allows an amendment outside the date specified in the scheduling order "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The district court consented to Plaintiff's amendment, finding good cause for the delay because Plaintiff did not learn until his deposition on June 12, 2013 that Defendants had in fact purchased insurance for him in January 2012 (before retroactively cancelling it) and that he was thus arguably a covered employee entitled to COBRA notice at the time of his termination.

We review the district court's good cause finding for an abuse of discretion. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).  There clearly was no abuse of discretion here.  The record shows that in spite of his diligence, Plaintiff did not have the information necessary to assert a viable COBRA notice claim until after the amendment deadline expired.  *See id.* at 1419 (noting that diligence is required to support a good cause finding).  It was thus within the court's discretion to allow the amendment.

## II.    *Batson* Challenge

Following voir dire, Plaintiff used each of his three peremptory strikes to

remove white males from the venire panel.  Defendants challenged the strikes under *Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny, which prohibit the use of peremptory strikes to exclude jurors based on race or gender.[4]  *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130–31 (1994) (reaffirming that *Batson* prohibits discrimination on the basis of race, and extending its holding to gender-based strikes).  After conducting a *Batson* hearing, the district court expressed serious doubt that Defendants had even made a prima facie case of discrimination against white males,[5] given that six white males were left after the peremptory strikes to serve on the jury of eight.  Indeed, based on the numbers provided during the *Batson* hearing, white males, who represented only 64% of the venire panel, constituted 75% of the jury that was actually selected.  Even assuming a prima facie case, the court found, in the alternative, that Plaintiff articulated race and

---

[4]  It should be noted that Defendants used each of their three peremptory strikes to remove black females from the venire panel.  Plaintiff challenged these strikes under *Batson*, but the district court rejected his challenge, just as it rejected Defendants' challenge of Plaintiff's strikes.  Plaintiff has not filed a cross-appeal based on Defendants' use of all of their strikes against women and black jurors.

[5]  Defendants conflate race and gender in their focus on Plaintiff's strike of "white males."  For simplicity's sake, we use the same term because, as it happens, the three whites struck by Plaintiff also were male.  But in doing so, we suggest no endorsement of a hyphenated category of protected status under *Batson* that could be created by combining into sub-sets the potential groupings of race and gender in a particular jury venire.  *See United States v. Walker*, 490 F.3d 1282, 1291 n.10 (11th Cir. 2007) ("The Supreme Court has not yet ruled whether constitutional protections afforded to race-based groups in *Batson*, and gender-based groups in *J.E.B. v. Alabama ex rel. T.B.*, extend to combined race-gender groups.").  And although for analytic purposes we assume that we should focus on whether Plaintiff violated *Batson* either through its strikes of whites (whatever their gender) or its strikes of males (whatever their race), we find no *Batson* error under either approach.

gender-neutral reasons for the challenged strikes that were sufficient to overcome any inference of discrimination.

A *Batson* challenge is governed by a three-step inquiry:  (1) first, the party challenging a strike must make a prima facie case of discrimination, (2) the burden then shifts to the striking party to offer a permissible race and gender-neutral justification, and (3) if such an explanation is tendered, the trial court must decide whether the challenging party has shown purposeful discrimination.  *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1242–43 (11th Cir. 2014) (citing *Johnson v. California*, 545 U.S. 162, 168 (2005)).  The trial court must consider all of the relevant facts and circumstances in determining whether a party has made a prima facie case at the first step, or shown purposeful discrimination at the third step of the *Batson* inquiry.  *Id.* at 1242, 1251.

We review the district court's *Batson* ruling for clear error.  *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).  The trial court's findings, on both the prima facie and the purposeful discrimination prongs, are entitled to deference and a presumption of correctness.  *See United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1039 (11th Cir. 2005) ("We give great deference to a district court's finding of whether a prima facie case of impermissible discrimination has been established[.]"); *Madison*, 761 F.3d at 1248 (applying the clearly erroneous standard to the district court's ruling on purposeful discrimination).

The district court did not commit any *Batson* error here, much less clear error.  Like the district court, we are uncertain that Defendants even established a prima facie case of discrimination, given that:  (1) the case was not racially charged, and although Plaintiff initially raised an issue of gender discrimination, Defendants have suggested no plausible reason why, on this record, we could infer a discriminatory motive based on Plaintiff's strikes of jurors from his own protected category (males); (2) there is no evidence of a history of race or gender-based strikes by Plaintiff's attorney, or any other evidence that would suggest a discriminatory motive; and (3) the jury selected contained a higher percentage of whites (75%) and males (87%) than did the venire (64% white and 71% male).[6] *See United States v. Robertson*, 736 F.3d 1317, 1326 (11th Cir. 2013) (discussing various circumstances that are relevant to the first step of the *Batson* inquiry); *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1224 (11th Cir. 2013) ("That a predominantly black jury was selected cuts in favor of the . . . conclusion that no *Batson* violation occurred."); *United States v. Campa*, 529 F.3d 980, 997–98 (11th Cir. 2008) (finding no prima facie case where the prosecutor used seven out of nine peremptory strikes against black veniremen, but the jury ultimately included three

---

[6]  There were 9 white males, 4 black females, and 1 black male on the venire.  Breaking down the categories separately by race and gender, 9 out of 14 (or 64%) of the venire were white and 10 of 14 (or 71%) were male.  The jury included 6 white males, 1 black male, and 1 black female, meaning that 6 out of 8 jurors were white (75%) and 7 out of 8 (87%) were male.  Thus, the jury selected contained a higher percentage of both males and whites than did the venire from which they were chosen.

black members and one black alternate).

But even assuming Defendants established a prima facie case, the district court did not clearly err in finding that they failed to show purposeful discrimination. At trial, Defendants challenged Plaintiff's decision to strike jurors number 2, 14, and 11. Plaintiff explained each strike as follows: (1) Juror 2 was a manager who had been involved in terminating employees; (2) Juror 14 was a CPA, and Plaintiff's attorney routinely struck CPAs; and (3) Juror 11 was an insurance agent, which Plaintiff's attorney believed would make him less favorable to Plaintiff's case.

The district court found that these explanations were legitimate and facially neutral—a decision to which we attribute no error—and moved to the third step of the *Batson* inquiry: whether the movant had shown purposeful discrimination. *See Madison*, 761 F.3d at 1250 (noting that the reason offered for a strike will be deemed neutral unless it is inherently discriminatory). Before the trial court, Defendants did not challenge Plaintiff's explanations for striking Jurors 11 and 14, and they do not dispute Plaintiff's contention that they thereby waived their *Batson* argument as to these jurors. Their argument on appeal then is focused only on Juror 2.

As to Juror 2 (the white male manager who said he had been involved in terminating employees), Defendants argue that Plaintiff's asserted reason for

12

striking him was not credible because Plaintiffs could just as well have struck Juror 4, a black male who was also a manager.  At the *Batson* hearing, Plaintiff's attorney explained that he thought Juror 4 would be more favorable to his case than Juror 2 because Juror 4 had held the same job for 35 years and thus likely had a better understanding of the value of keeping a job than Juror 2, who had bounced from job to job.  We find no clear error by the district court in crediting that explanation, and in concluding that Plaintiff's decision to strike Juror 2, instead of Juror 4, was not motivated by purposeful discrimination.  *See Parker v. Allen*, 565 F.3d 1258, 1271 (11th Cir. 2009) ("The prosecutor's failure to strike similarly situated jurors is not pretextual . . . where there are relevant differences between the struck jurors and the comparator jurors.") (internal quotation marks omitted).  In short, the district court did not err in concluding that Plaintiff's jury strikes did not run afoul of *Batson*.

## III.    <u>Motions For Judgment As A Matter of Law</u>

At the close of Plaintiff's evidence, Defendants moved for judgment as a matter of law pursuant to Rule 50(a).  Filing a written motion, Defendants argued that there was insufficient evidence to support Plaintiff's retaliation claim.  Orally, Defendants also argued that Defendant Work Train USA could not be held liable on the retaliation claim because it was not Plaintiff's employer.  The district court denied Defendants' motion as to the retaliation claim.  The court did not rule on

the motion concerning Work Train USA, but noted that the issue should have been raised "long before" trial.

Defendants renewed both motions at the close of their own evidence. The district court denied the renewed motion as to the retaliation claim. As to Work Train USA's liability, the court again noted that the issue should have been addressed prior to trial on a motion to dismiss. The Court decided to carry the issue with the case, and submitted the case to the jury without ruling on the motion.

While the jury was deliberating, Plaintiff filed a supplemental brief identifying record evidence showing that both Work Train USA and Work Train Staffing were Plaintiff's employer under a "single employer" or "integrated enterprise" theory. The district court took Plaintiff's brief under advisement and informed Defendants that they could respond to it. Defendants never did so, and the jury returned a verdict for Plaintiff on his retaliatory cancellation of insurance claim against "WorkTrain"—a corporate entity that referred jointly to Defendants Work Train USA and Work Train Staffing.

Not only did Defendants fail to dispute the legal and factual arguments made by Plaintiff in support of his contention that the two entities constituted Plaintiff's employer under a "single employer" theory, but they also chose not to renew their motion for judgment as a matter of law under Rule 50(b). Nor after the verdict did they move for a new trial under Rule 59(b). Defendants now belatedly reassert on

14

appeal their Rule 50(a) arguments made prior to submission of the case to the jury. Specifically, Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's retaliatory cancellation claim because the evidence was insufficient to support it, and that Defendant Work Train USA is entitled to judgment on the claim because it was not Plaintiff's employer at the time of his termination.

## A.    Defendants have waived their arguments in support of judgment as a matter of law.

Defendants' failure to file a post-verdict motion for judgment or for a new trial precludes any appeal of the issues asserted in their pre-verdict motion. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006). As the Supreme Court explained in *Unitherm*: "[d]etermination of whether a new trial should be granted or a judgment entered . . . calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Id.* at 401 (internal quotation marks omitted). Consequently, failure to file a post-verdict motion for judgment or a new trial "deprives the appellate court of the power to order the entry of judgment in favor" of the moving party. *Id. See also HI Ltd. P'ship v. Winghouse of Fla., Inc.*, 451 F.3d 1300, 1302 (11th Cir. 2006) ("Filing a pre-verdict, Rule 50(a) motion for judgment as a matter of law cannot excuse a party's post-verdict failure to move for either a JNOV or a new trial pursuant to Rule 59(b).").

15

**B.    Defendants are not entitled to judgment on the merits.**

Even assuming Defendants are entitled to appeal either issue, the district court did not err by failing to grant judgment as a matter of law.  On our review of the court's ruling, we view the evidence in the light most favorable to Plaintiff. *See Gowski v. Peake*, 682 F.3d 1299, 1310–11 (11th Cir. 2012).  Defendants can only prevail if there was "no legally sufficient evidentiary basis for a reasonable jury to find" for Plaintiff on the retaliatory cancellation claim or to enter judgment on the claim against WorkTrain USA.  *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1287 (11th Cir. 2011) (internal quotation marks omitted).  That is not the case as to either of the grounds asserted by Defendants.

1.    <u>There is sufficient evidence to support the jury's verdict that the cancellation of Plaintiff's health insurance was retaliatory.</u>

Defendants presented some evidence at trial that Plaintiff's insurance was canceled because he failed to pay the full premium for coverage in January 2012, rather than in retaliation for his discrimination charges.  But Plaintiff rebutted this explanation with evidence that:  (1) Petrusnek told Plaintiff during the January 6 meeting that part of the premium had been deducted from Plaintiff's last check and that Defendants would pay the other part; (2) the timing of the retroactive cancellation was suspicious, coming just a few weeks after Petrusnek learned about Plaintiff's EEOC charge; (3) Petrusnek did not tell Plaintiff he was cancelling the insurance or offer to refund the portion of the premium that had been deducted

16

from Plaintiff's last paycheck; and (4) Petrusnek lied to Blue Cross about

Plaintiff's last day of work, falsely stating that Plaintiff had been terminated at the

end of December 2011 in order to obtain the retroactive cancellation. Based on

this evidence, the jury was authorized to find the cancellation was retaliatory. *See*

*Booth v. Pasco Cty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) ("[C]redibility

determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge[.]") (internal

quotation marks omitted).

### 2.    The evidence supports Work Train USA's liability.

Plaintiff likewise presented evidence at trial that Defendants Work Train

USA and Work Train Staffing each provided certain benefits of employment and

thus operated jointly as Plaintiff's employer. Particularly relevant to the retaliatory

cancellation claim, Plaintiff's evidence showed that Work Train USA is the entity

that contracted with Blue Cross for Plaintiff's insurance benefits at the time of his

termination. In addition, some of Plaintiff's sales documents contained the

heading Work Train USA, indicating that Plaintiff's employment and sales were at

least partially for the benefit of Work Train USA, although his salary was paid by

Work Train Staffing. This evidence was sufficient to support a finding that Work

Train USA and Work Train Staffing were joint employers, and thus jointly liable

on Plaintiff's retaliation claim. *See Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d

1350, 1360 (11th Cir. 1994) ("[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.")

Alternatively, there is evidence that Work Train USA and Work Train Staffing operated as an "integrated enterprise" equally subject to liability on Plaintiff's retaliation claim. *See McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987). Four factors are relevant to the "integrated enterprise" inquiry: (1) the degree of interrelatedness of operations, (2) the degree of centralized control of labor relations, (3) the presence of common management, and (4) common ownership or financial control. *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999). Plaintiff presented sufficient evidence to consider Work Train USA and Work Train Staffing an integrated enterprise under these factors, including the exhibits described above. In addition, it is undisputed that the two entities have common management and owners, and that they exercise centralized control over their operations from a common home office in Birmingham, Alabama. Thus, the district court did not err by refusing to grant judgment as a matter of law to Work Train USA on Plaintiff's retaliation claim on the ground that Work Train USA was not Plaintiff's employer.

## IV.    Jury Instructions

Defendants argue that the district court erred by failing to instruct the jury

18

that "but for" causation is required to prevail on a retaliation claim.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).  We review the district court's refusal to give a requested instruction for an abuse of discretion.  *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012).  "We will not disturb a jury's verdict" on this ground unless the instructions, "taken as a whole, [are] erroneous and prejudicial."  *Watkins v. City of Montgomery, Ala.*, 775 F.3d 1280, 1290 (11th Cir. 2014) (internal quotation marks omitted).

The district court gave the pattern instruction on causation, advising the jury that "[t]o determine that WorkTrain took an adverse employment action because of Plaintiff's protected activity, you must decide that WorkTrain would not have taken the action had Plaintiff not engaged in the protected activity but everything else had been the same."  This instruction incorporated the "but-for" standard of *Nassar* and accurately stated the law.  It was not erroneous, and certainly not an abuse of discretion.  *See United States v. Dominguez*, 661 F.3d 1051, 1072 (2011) ("Because the instructions given by the district court were correct statements of the law, we find no abuse of discretion in the refusal to give a separate instruction on specific intent and mistake of fact.").

## V.    <u>COBRA Notice Claim</u>

Finally, Defendants argue that the district court erroneously entered judgment in favor of Plaintiff on his COBRA notice claim.  It is undisputed that

Defendants did not notify Plaintiff, at any time prior to this lawsuit, of his COBRA right to continuation of coverage.  Plaintiff's judgment on this claim should therefore be upheld unless Defendants can fit within an applicable exception to COBRA's requirements.  *See* 29 U.S.C. §§ 1163(2) and 1166(a)(4)(A) (requiring the health plan administrator to provide notice of COBRA continuation rights upon a covered employee's termination); *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1343 (11th Cir. 2001) (noting that the defendant's "failure under § 1166(a)(4)(A) to notify the [plaintiff] of continuation coverage meant that [the plaintiff] was eligible for penalties" under COBRA).

As they did below, Defendants argue that:  (1) they are exempt from COBRA under the "small employer" exception, and (2) Plaintiff's termination was not a "qualifying event" under COBRA because Plaintiff was terminated for "gross misconduct."  Defendants contend further that even if Work Train Staffing was liable on the COBRA claim, Work Train USA and Petrusnek were not, because neither was Plaintiff's employer at the time of his termination.

## A.    The "small employer" exception does not apply.

COBRA creates an exception from its requirements for employers who "normally employed fewer than 20 employees on a typical business day during the preceding calendar year."  29 U.S.C. § 1161(b).  If the staffing workers are counted along with Work Train's full-time employees, it is undisputed that Work Train

20

employed significantly more than 20 employees on a typical business day during 2011, the relevant calendar year for purposes of Plaintiff's claim. Although the staffing workers were outsourced to other job sites, the evidence in the record indicates that, as defined by COBRA, they remained employees of Work Train. *See* 29 U.S.C. § 1002(5), (6) and *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992) (using traditional agency principles, such as the tax treatment of and the right to control and direct a worker, to determine his status as an employee under ERISA).

Work Train was designated as the "sole employer" of the staffing workers in its client contracts. Pursuant to the contracts, Work Train was responsible for recruiting, hiring, training, assigning, and supervising all of the staffing workers, and it expressly retained the right to fire the workers. Petrusnek confirmed in his deposition testimony that the staffing workers were Work Train employees, although they were outsourced to other locations, and that Work Train handled their payroll and taxes. In addition, Work Train held itself out as the employer of the staffing workers by claiming federal tax credits for them. Given this evidence indicating that the 2011 staffing workers were Work Train employees, the "small employer" exception is inapplicable.

### B. Plaintiff's termination was a qualifying event.

Neither is there any evidence to support Defendants' argument that Plaintiff

was fired for "gross misconduct" and thus not entitled to continuation of coverage under COBRA. *See* 29 U.S.C. § 1163(2) (defining "qualifying event" to include termination of an employee "other than by reason of such employee's gross misconduct"). Instead, all of the evidence suggests that Plaintiff was fired solely for missing his December 2011 sales quota: a lapse that implicates job performance, not misconduct. Defendants try to characterize Plaintiff's decision to take a few days of leave at the end of 2011 as misconduct, but they do not dispute that Plaintiff's leave complied with Work Train's vacation policy. In fact, Work Train co-owner Mark George conceded at trial that Plaintiff "had a right to take a vacation" and that "taking a vacation was not misconduct."

The parties have not cited any Eleventh Circuit case law interpreting the term "gross misconduct" as used in COBRA. But we agree with the Seventh Circuit that it must involve something more than incompetence or unsatisfactory performance. *See Mlsna v. Unitel Commc'ns, Inc.*, 91 F.3d 876, 881 (7th Cir. 1996) ("job incompetence alone does not constitute gross misconduct for COBRA purposes"). In short, there is no evidence to suggest that Plaintiff was terminated for anything other than lackluster sales, which does not qualify as "gross misconduct" under COBRA.

## C.    Work Train USA and Petrusnek are liable.

COBRA authorizes the trial court, in its discretion, to impose a penalty of up

22

to $110 a day on any plan administrator who fails to meet its notice requirements. 29 U.S.C. § 1132(c)(1). Again, Defendants concede that they did not provide notice of continuation coverage under COBRA when Plaintiff was terminated, and the district court correctly concluded that no exceptions to the notice requirement are applicable. Petrusnek is identified as a plan administrator in Defendants' sworn discovery responses. In addition, Petrusnek testified at trial that he was a plan administrator. Thus, the district court did not err by concluding that Petrusnek was personally liable.

As to Work Train USA, the plan documents specify that "[t]he plan sponsor and the plan administrator is the employer." Pursuant to the plan, the term "employer" has the same meaning as the term "group." The term "group" is in turn defined by the plan to include the "organization that has contracted with us to provide or administer group health benefits pursuant to the plan." Defendants do not dispute that Work Train USA contracted with Blue Cross to provide the plan at issue in this case, as evidenced by the refund issued to Work Train USA following the retroactive cancellation of Plaintiff's health insurance. Accordingly, the district court did not err by entering judgment against Work Train USA on Plaintiff's COBRA notice claim.

23

## CONCLUSION

For the reasons explained above, we find no error in the district court's entry of judgment against Defendants on Plaintiff's retaliatory cancellation of insurance and COBRA claims. Accordingly, we affirm the judgment.