[Cite as *State v. Moore*, 2024-Ohio-1783.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                                       No. 113041

    v.                                  :

TARA MOORE,                             :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 9, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664492-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Luke Habermehl, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Tara Moore appeals her conviction for felonious assault stemming from her part in causing serious physical harm to the victim. For the following reasons, that conviction is affirmed.

{¶ 2} Moore and the codefendant Tyerra Pouge were both involved in relationships with Tenard Davis before the victim entered the picture. Davis began a relationship with the victim after being released from an unrelated prison sentence, and the victim became pregnant with Davis's child. The victim and Pouge and Moore were acquainted but were not on good terms.

{¶ 3} On the night of the assault, which Moore characterizes as mutual combat between her and the victim and only involving minor injuries, the victim drove to the west Flats area in Cleveland to meet Davis around 2:00 a.m. After a short walk, the victim returned to her car and attempted to leave. Davis kept turning her car off preventing the victim's departure. At that time, the victim was in the driver's seat and the headlights were activated. The victim saw three people quickly approaching the vehicle from the front and first recognized Moore, who began to run toward the vehicle. Pouge was the second person. The third individual was never identified.

{¶ 4} Moore jumped into the front passenger seat and immediately began punching the victim. The victim tried to defend herself, but Pouge joined the attack from behind by hitting the victim on the top of her head with a handgun. Blood started rushing down the victim's face as she turned to face the second threat. The

victim was able to kick at Pouge, who then dropped the firearm. Pouge pulled the victim from the car and threw her to the ground to continue the attack. Moore exited the vehicle and picked up the firearm to hand it back to Pouge, who was by then sitting on top of the victim and continuing the assault by hitting the victim with the firearm — demonstrating that Moore took no affirmative steps to distance herself from Pouge's conduct subsequent to Moore's initial aggression. The victim was fading in and out of consciousness.

{¶ 5} Moore told Pouge something to the effect that the victim had enough, and the codefendants fled the scene. Davis had disappeared sometime during the attack, leaving the pregnant victim to fend for herself.[1] The victim called 911 and drove herself to the emergency room for treatment. She was diagnosed with a concussion and received 20 staples and stitches to close the wounds on the top of her head and her ear, leaving some scarring.

{¶ 6} Moore was charged with two counts of felonious assault: one for a violation of R.C. 2903.11(A)(1) (causing serious physical harm) and another for a violation of R.C. 2903.11(A)(2) (causing or attempting to cause physical harm with a deadly weapon), along with attendant one- and three-year firearm specifications. The jury acquitted Moore of the (A)(2) charge but found her guilty of knowingly causing serious physical harm to the victim for her part in the assault, along with the one-year firearm specification. The trial court imposed a non-life indefinite

---

[1] It does not appear from the record that Davis was implicated as a coconspirator in the attack.

sentence of five to seven and one-half years under R.C. 2929.14(A)(2)(a), to be served consecutive to the one-year prison term imposed on the firearm specification.

{¶ 7} In this appeal, Moore advances four assignments of error, which will be addressed out of order for the ease of discussion. In the fourth assignment of error, Moore claims that her trial counsel rendered ineffective assistance by failing to file a motion to sever the codefendants' trial.

{¶ 8} In order to establish ineffective assistance of counsel, a defendant must show "(1) that counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced the defendant, i.e., that there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Drain*, 170 Ohio St.3d 107, 2022-Ohio-3697, 209 N.E.3d 621, ¶ 36, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142-143, 538 N.E.2d 373 (1989). A "reasonable probability" is a probability of a different result sufficient enough to undermine confidence in the outcome, the same deferential inquiry as applied under the plain-error standard of review. *Drain* at ¶ 52, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004), and *Strickland*, at 694.

{¶ 9} Moore has not demonstrated that her trial counsel's performance fell below an objective standard of reasonable representation because a motion to sever the trial would have been futile.

{¶ 10} In general, "[t]wo or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." Crim.R. 8(B). Joinder "conserves resources by avoiding duplication inherent in multiple trials and minimizes the possibility of incongruous results that can occur in successive trials before different juries." *State v. Hamblin*, 37 Ohio St.3d 153, 158, 524 N.E.2d 476 (1988). Joinder of codefendants at one trial, however, is not a foregone conclusion. Crim.R. 14 allows the bifurcation of counts or the trial of codefendants if a defendant or the state is prejudiced by the joinder. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49. Under Crim.R. 14, in pertinent part, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶ 11} Generally, joinder is favored unless the jury could potentially confuse the issues and the facts essential to the elements of the crimes. "To succeed on a motion to sever, a defendant 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.'" *State v. Lytle*, 10th Dist. Franklin Nos. 15AP-748 and 15AP-754, 2016-Ohio-3532, ¶ 64, quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981), syllabus.

When codefendants are charged in the same indictment, information, or complaint and seek to sever the trial, "the defendant "'bears the burden of demonstrating prejudice * * *.""" *State v. Hubbard*, 8th Dist. Cuyahoga No. 111939, 2023-Ohio-3468, ¶ 30, quoting *State v. Willis*, 8th Dist. Cuyahoga No. 107070, 2019-Ohio-537, ¶ 10, quoting *State v. Saade*, 8th Dist. Cuyahoga Nos. 80705 and 80706, 2002-Ohio-5564, ¶ 12, citing *State v. Coley*, 93 Ohio St.3d 253, 754 N.E.2d 1129 (2001), and *LaMar*.

{¶ 12} Further, it is generally recognized that codefendants asserting antagonistic theories in a joint trial does not constitute prejudice as contemplated under Crim.R. 14, when the claims of prejudice are solely based on the existence of varying theories of the defense being presented to the jury. *State v. Brunson*, 8th Dist. Cuyahoga No. 107683, 2020-Ohio-5078, ¶ 51-52, citing *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 31 (8th Dist.), and *State v. Daniels*, 92 Ohio App.3d 473, 478, 636 N.E.2d 336 (1st Dist.1993). Although this does not foreclose the possibility that a court could conclude that some defenses are so intrinsically irreconcilable and prejudicial to the other codefendant that severance is required, the burden is on the defendant to demonstrate the existence of that prejudice beyond merely claiming that the arguments were "mutually antagonistic." *See generally Dues* at ¶ 31 ("mutually antagonistic defenses are not prejudicial per se").

{¶ 13} Therefore, the starting point of the analysis begins with the notion that prejudice from the joinder under Crim.R. 14 is not merely presumed based on the existence of divergent theories presented by codefendants at a joint trial. In this

appeal, without more, it cannot be concluded that defense counsel's performance fell below the objective standard of reasonable representation in failing to file a motion to sever. Nothing demonstrates that a motion to sever the trials would have been colorable under the particular circumstances of this case.

{¶ 14} In this appeal, Moore claims she was prejudiced from the joinder based on the mutually antagonistic nature of Pouge's and her separate theories of the defense, with Pouge claiming self-defense and Moore blaming Pouge for the severity of the assault. That argument is without merit. "[M]utually antagonistic defenses are not prejudicial per se," *Dues* at ¶ 31, citing *Daniels* and *Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), and therefore, it cannot be concluded that Moore's trial counsel's performance fell below the objective standard of reasonable representation.

{¶ 15} Moore's argument relies on a presumption that Pouge's and her differing theories of the defense constitute prejudice for the purposes of Crim.R. 14. Because there is no presumption of prejudice based solely on codefendants' presenting antagonistic theories at a joint trial, it cannot be concluded that Moore's trial counsel's performance fell below the objective standard in failing to seek joinder — that argument would have been meritless. *See Dues,* 2014-Ohio-5276, 24 N.E.3d 751, at ¶ 31. The fourth assignment of error is overruled.

{¶ 16} In the third assignment of error, Moore claims that "the trial court erred when it denied the defense's *Batson* challenge to the [state's] removal of a black woman from the jury." *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90

L.Ed.2d 69 (1986). According to Moore, Juror number 15 was the only black, female member of the venire, a demographic that reflected her own race and gender, and therefore, the state's use of a peremptory challenge against that venire member violated *Batson*. Moore has not demonstrated that *Batson* has been that narrowly applied.

{¶ 17} "A defendant has 'the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria.'" *State v. Garrett*, 171 Ohio St.3d 139, 2022-Ohio-4218, 216 N.E.3d 569, ¶ 67, citing *Batson* at 85-86. "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits purposeful discrimination" in the "use of a peremptory challenge to excuse a prospective juror based on his or her race or gender." *State v. Stalder*, 173 Ohio St.3d 203, 2023-Ohio-2359, 229 N.E.3d 24, ¶ 2, citing *Batson* and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (applying *Batson* to discrimination based on gender). "In *Batson*, the Supreme Court set forth a system for challenging peremptory challenges that sought to balance the traditional notion of allowing prosecutors to strike jurors for any reason, with the prohibition against striking jurors on the prohibited basis of race." *United States v. Howard*, 67 F.4th 876, 878 (7th Cir.2023), citing *Batson* at 89, and *United States v. Harris*, 197 F.3d 870, 873 (7th Cir. 1999).

{¶ 18} *Batson* "'established a three-factor test for adjudicating race-based challenges'": (1) the party opposing the peremptory challenge must make a prima facie case of racial or gender discrimination; (2) if a prima facie case of

discrimination has been established, the burden shifts to the other party to provide a race or gender-neutral explanation for the use of the peremptory challenge; and (3) "'the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination.'" *Garrett* at ¶ 68, quoting *Batson* and *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433. In assessing the second factor of the inquiry, the issue is the facial validity of the party's explanation, which "need not rise to the level justifying exercise of a challenge for cause." *Id.*, citing *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

{¶ 19} The appellate record in this case does not include the demographic composition of the venire or the empaneled jurors. That potentially hampers appellate review, but it does not preclude it. *See Nguyen v. Frauenheim*, 45 F.4th 1094, 1102 (9th Cir.2022), fn. 3, citing *United States v. Guerrero*, 595 F.3d 1059, 1063 (9th Cir. 2010), fn.3. Although the federal "'Constitution forbids striking even a single prospective juror for a discriminatory purpose,' * * * generally striking only one prospective juror who belongs to a protected group is not enough to draw an inference [of discriminatory intent] without other evidence." *Id.* at 1101, 1102, quoting *Flowers v. Mississippi*, 139 S.Ct. 2228, 2244, 204 L.Ed.2d 638 (2019); citing *Wade v. Terhune*, 202 F.3d 1190, 1198 (9th Cir.2000); *Fernandez v. Roe*, 286 F.3d 1073, 1078 (9th Cir.2002) ("'[t]wo challenges out of two [African American] venirepersons are not always enough to establish a *prima facie case*' because 'the numbers are so small (and, hence, potentially unreliable)'" (emphasis sic)); and

*Shirley v. Yates*, 807 F.3d 1090, 1101 n. 7 (9th Cir.2015) ("'[W]hen a *Batson* challenge is made after the first minority to be called into the jury box is peremptorily struck but well before jury selection concludes, it would be erroneous to find that a *prima facie case* had been made merely because *at the time of the challenge* the prosecutor had struck 100% of minority veniremembers.'" (Emphasis sic.)).

{¶ 20} "[W]hen a party objecting to a peremptory challenge offers a bare allegation of [racial or] gender discrimination without offering any other relevant facts and circumstances to support an inference of [that] discrimination," the moving party has failed to "establish a prima facie case of purposeful [racial or] gender discrimination." *Stalder*, 2023-Ohio-2359, at ¶ 5. In order to successfully establish a prima facie case of purposeful discrimination in this context, therefore, "'the defendant must demonstrate (1) that members of a cognizable group were peremptorily challenged, *and* (2) that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their [race or gender].'" (Emphasis added.) *Id.* at ¶ 17, quoting *State v. Johnson*, 88 Ohio St.3d 95, 116, 723 N.E.2d 1054 (2000).

{¶ 21} In this case, both before the trial court and in this appellate briefing, Moore claims that the state's exercising its second peremptory challenge against Juror number 15 violated *Batson,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, because the prospective juror identified herself as a black female, the only member

of the venire considering herself to identify as both protected categories of race and gender.

{¶ 22} The record does not disclose the actual demographic makeup of the venire, nor that of the empaneled jury. According to what can be gleaned from the record, and contrary to the statements made by both parties at oral argument, it is apparent that Juror number 15 was not the only black person on the venire, nor was she the only female present. *See, e.g.*, tr. 597:22-598:4 (according to the defense counsel, after the state indicated its intent to excuse Juror number 15, "the State has now kicked off 100 percent of African-American females, 33 percent of African-Americans at least the best I can see * * *.");[2] tr. 607:22-608:9 (five of the 12 seated jurors were women based on the trial court's use of the honorific "Mrs." in naming the veniremember to be empaneled). Thus, Moore's claim appears to be an attempt to advance a *Batson* challenge to include a combined demographic of race *and* gender. Moore has not demonstrated a constitutional violation.

{¶ 23} The Supreme Court has never extended the federal law as announced in *Batson* to include a combined race-gender group. *Hoyos v. Davis*, 51 F.4th 297, 309 (9th Cir.2022); *Nguyen*, 45 F.4th at 1100, citing *Cooperwood v. Cambra*, 245 F.3d 1042 (9th Cir.2001), and *Turner v. Marshall*, 63 F.3d 807 (9th Cir.1995); *see*

---

[2] The state disagreed with the defense counsel's assessment as to the demographic composition of the panel. After the *Batson* challenge was raised, the state noted that it believed defense counsel's assessment of Juror number 15 being the only black female on the venire was misplaced because the jury was not asked to reveal their racial demographic. This highlights the need to create a more developed record when advancing *Batson* challenges and defenses.

*also Virciglio v. Work Train Staffing LLC*, 674 Fed.Appx. 879, 886 (11th Cir.2016), fn. 5, citing *United States v. Walker*, 490 F.3d 1282, 1291 (11th Cir.2007), fn. 10; *Sweeper v. Graham*, S.D.N.Y., 2017 U.S. Dist. LEXIS 160130, 25 (Sept. 26, 2017); *United States v. Dennis*, 804 F.2d 1208, 1210 (11th Cir. 1986). Thus, the entire basis of Moore's *Batson* challenge is formed on the unproven premise that the peremptory challenge exercised against a black female veniremember implicated *Batson*.

{¶ 24} Moore has not addressed the case authority contrary to her position that *Batson* precludes parties from exercising a peremptory based on discriminatory intent toward a combined race-gender category, nor has she presented an argument under Ohio specific laws that would recognize a combined category of race and gender. This hampers appellate review. In light of the fact that nearly half the empaneled jury was identified by the court as female, we are limited to determining whether the state's use of a peremptory challenge to excuse Juror number 15 was demonstrated to be impermissibly based on her race alone under *Batson*. Based on the limited arguments and record presented, Moore has failed to establish a prima facie case of discriminatory intent prohibited under *Batson*.

{¶ 25} Moore's *Batson* challenge, as presented to the trial court, was limited to the misplaced argument that *Batson* extends to a narrow class of persons based on the combination of their race and gender. For the first time in her appellate briefing, Moore also argues that another prospective juror, Juror number 21, a white

female according to Moore,[3] expressed concerns regarding the consequences with a jury finding a defendant guilty. Moore claims that the similarity in the responses demonstrates the state's discriminatory intent behind seeking to excuse Juror number 15 because the state did not challenge the other prospective juror. The two venire members, however, were not similarly situated. That shared response to the isolated question is the only similarity in their multitude of responses to various questions posed during the whole of the voir dire.

{¶ 26} In the midst of the voir dire, at least three of the prospective jurors, including Juror number 15 and Juror number 21, began discussing the emotional weight associated with the consequences of finding a defendant guilty at trial. Juror number 21 acknowledged that concern, joining in the other prospective jurors' assessments, based on her stated belief that jail time was not a "perfect response" to punishing criminal misconduct. Tr. 399:21-400:10. According to Moore, Juror number 21 expressed the same concerns that could arise as a consequence of finding a defendant guilty as did Juror number 15, so the state's failure to challenge Juror number 21 proves its discriminatory intent toward Juror number 15. *Id.*

{¶ 27} Juror number 21's single, isolated acknowledgment of the potential emotional toll in finding a defendant guilty is not the equivalent to Juror number 15's self-recognized bias against law enforcement, her self-professed inability to be

---

[3] Moore claims that "white and black venirepersons" were treated differently during voir dire, but that claim does not appear to be based on the record presented for appellate review. It does not appear that Juror number 21 ever revealed her race or ethnicity to the parties during voir dire, nor does Moore cite to the relevant portion of the transcript to substantiate her claim.

fair and impartial, and her desire to not be part of the jury, the primary basis of the state's initial for-cause challenge against Juror number 15 that was denied by the trial court. Tr. 219:13-220:2; tr. 223-10-20; tr. 398:2-7; tr. 1-6; tr. 518:3-5. Juror number 21 did not provide similar responses on the question of bias, impartiality, or desire to avoid serving on the jury. Even if this argument had been timely raised for the trial court's consideration, the different responses of the two prospective jurors on the question of bias and impartiality cannot form the basis of demonstrating any discriminatory intent on behalf of the state. Moore has not demonstrated that the state's decision to exercise one of its peremptory challenges against Juror number 15, based on her self-professed bias and potential inability to be impartial, and not the other prospective juror, who happened to agree with Juror number 15's answer to an unrelated question, was solely based on a discriminatory intent.

{¶ 28} Moore bears the burden of demonstrating that the state's use of a peremptory challenge was impermissibly based on excluding a prospective juror based on her race. Because Juror number 15 was not the only black member of the venire and Moore's argument is dependent on that being a fact of consequence, that argument is without merit. She has not presented any argument or identified any circumstances demonstrating a discriminatory intent on behalf of the prosecutor — Moore merely presumes the existence of discriminatory intent from the fact that Juror number 15 was a member of a cognizable class, the only member of that class to be excused from service according to what can be gleaned from the limited record

presented for review. It therefore suffices that Moore has not demonstrated that the state's use of a peremptory challenge against Juror number 15 was motivated by purposeful discrimination. The third assignment of error is overruled.

{¶ 29} In the final two assignments of error, Moore claims her conviction for felonious assault for causing serious physical harm to the victim is not based on sufficient evidence or is against the weight of the evidence. In a cursory fashion, Moore claims that there is no evidence that Moore was complicit in the assault because Moore's conduct in aiding Pouge was limited to picking up the dropped firearm. Also, according to Moore's characterization of the assault as being independent from Pouge's attack, Moore caused only minor injuries to the victim because Pouge was responsible for the serious physical harm; conduct that should not be attributed to Moore.

{¶ 30} With respect to the weight of the evidence, Moore claims that the state's evidence "was unreliable and its chief witness's testimony shot through with contradictions." Moore has not explained or further discussed what those contradictions would be. In light of the limited argument, Moore has not demonstrated that the jury lost its way in finding her guilty of felonious assault for causing serious physical harm. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 31} With regard to the sufficiency of the evidence, beyond providing the standard of review, Moore provides no case authority or relevant discussion in

support of her conclusions that there is insufficient evidence of Moore's complicity in assaulting the victim leading to the serious physical harm, which is amply demonstrated through the victim's trial testimony. Although Moore characterizes the evidence of Moore's acting in concert with Pouge as scarce, that implicitly concedes the existence of *some* relevant evidence demonstrating Moore's complicity in the assault on the victim. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 150, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 32} Notwithstanding the limitations of the arguments presented, the victim testified at length, establishing that Moore and Pouge simultaneously ambushed her, beating her severely enough to cause a concussion and require a significant combination of staples and stitches to close the wounds caused by the attack. When Pouge dropped the firearm, Moore picked it up and handed it back to Pouge who continued using the firearm as a blunt object to hit the victim. Tr. 648:17-20. It was only after the serious injuries were inflicted that Moore supposedly told Pouge to stop, right before they fled together — further demonstrating that Moore was not merely a bystander. Although Pouge may have been the direct cause of the most serious of the victim's injuries, there is no evidence to suggest that Moore and Pouge just happened to arrive at the same time to attack the victim independent of each other. There is more than sufficient, credible evidence establishing that the two defendants acted in concert to ambush and

assault the victim, which places criminal liability for the outcome on Moore as well as Pouge. The final two assignments of error are overruled.

{¶ 33} Moore's final conviction for felonious assault is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MICHAEL JOHN RYAN, J., CONCUR