[Cite as *Miles v. Cleveland Clinic Health Sys. E. Region*, 2025-Ohio-5628.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ROBYN D. MILES, ADMINISTRATOR, :
ETC., ET AL.,

      Plaintiffs-Appellants,     :

                      No. 114769

      v.     :

CLEVELAND CLINIC HEALTH     :
SYSTEM — EAST REGION, ET AL.,

      Defendants-Appellees.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 18, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912724

---

### *Appearances:*

The Mellino Law Firm, LLC, Christopher M. Mellino, and Calder C. Mellino, *for appellants.*

Reminger Co., L.P.A., Erin Siebenhar Hess, Brian D. Sullivan, and Brianna M. Prislipsky, *for appellee* Michelle F. Wallen, D.O.

Roetzel & Andress, LPA, Stephen W. Funk, Emily K. Anglewicz, R. Mark Jones, and Tammi J. Lees, *for appellees* Cleveland Clinic Health System — East Region dba South Pointe Hospital and the Cleveland Clinic Foundation.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiff-appellant Robyn D. Miles ("Miles"), individually and as the administrator of the Estate of Sydney Mariah Perryman ("Perryman"), deceased, appeals from the jury verdict in favor of defendant-appellee Michelle F. Wallen, D.O. ("Dr. Wallen") as well as defendants-appellees Cleveland Clinic Health System — East Region dba South Pointe Hospital and the Cleveland Clinic Foundation (jointly "the Cleveland Clinic") (Dr. Wallen and the Cleveland Clinic, collectively, "the defendants.") For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This lawsuit arises from the medical care provided to 17-year-old Perryman when she presented to the Cleveland Clinic's South Pointe Emergency Department ("South Pointe") on November 17, 2015. Perryman, who had Down syndrome, was transported by ambulance from her apartment where she lived with her mother, Miles, to South Pointe because of cold and flu-like symptoms. Dr. Wallen ordered the administration of Ativan and Benadryl shortly after Perryman's arrival at South Pointe allegedly because Perryman was combative and a danger to herself and others. Cleveland Clinic nursing staff removed the medications from the Pyxis, a vault that contains medications, using an override function and administered them to Perryman. Perryman's breathing became labored and sonorous and, despite the medical staff's attempts to resuscitate Perryman, she died.

{¶ 3} Miles initially filed a medical-malpractice and wrongful-death action in 2016 that she voluntarily dismissed without prejudice. *See* Cuyahoga C.P. No.

CV-16-870818. Miles refiled the complaint on March 19, 2019, alleging wrongful death, medical negligence, and loss of consortium against the Cleveland Clinic and Dr. Wallen.[1] Specifically, Miles alleged that the medical negligence of the Cleveland Clinic — including its nursing staff and doctors — and Dr. Wallen resulted in Perryman's death. The defendants denied any wrongdoing and contended that Perryman's advanced bilateral pneumonia with sepsis resulted in her untimely death.

**Prior Appeal**

{¶ 4} During the discovery phase of the litigation, the trial court ruled that Miles's medical expert witness was not qualified to offer standard-of-care opinions and, pursuant to that decision, denied Miles's motion for summary judgment and granted the defendants' motions for summary judgment. On March 23, 2022, Miles appealed the trial court's rulings; this court reversed the trial court's decisions and remanded the case. *Miles v. Cleveland Clinic Health Sys.-E. Region*, 2023-Ohio-2582 (8th Dist.).

**Motions in Limine**

{¶ 5} On November 21, 2024, in anticipation of trial, the parties filed numerous motions in limine. Relevant to this appeal is the Cleveland Clinic's

---

[1] The March 19, 2019 complaint also named Nathaniel Pavkov, D.O. ("Dr. Pavkov"), Affinity Medical Center ("Affinity"), and DHSC, LLC dba Affinity Medical Center ("DHSC") as defendants. Dr. Pavkov, Affinity, and DHSC settled the lawsuit with Miles prior to trial and were voluntarily dismissed with prejudice. Accordingly, Dr. Pavkov, Affinity, and DHSC are not parties to this appeal.

motion in limine that sought to preclude portions of Karen Tomczak, R.N.'s ("Tomczak") medical expert testimony on nursing standards of care.

{¶ 6} Tomczak's expert report and deposition testimony, collectively, identified alleged breaches in the standard of care provided by the Cleveland Clinic nurses to Perryman including failure to assess Perryman's acuity as Level 2; failure to complete a sepsis screening; failure to conduct a head-to-toe assessment; failure to correctly record cardiac rhythm and resuscitation equipment on the code sheet; failure to take Perryman to the CT scanner in a more timely manner; failure to properly document Perryman's medical records; failure to assign a primary nurse; and failure in medical administration ("eight alleged breaches"). In support of her negligent nursing claim, Miles intended to introduce Tomczak's testimony to establish the nursing standards of care breached by the Cleveland Clinic and the testimony of Dr. Daniel Benjamin ("Dr. Benjamin"), Dr. Mark Cicero ("Dr. Cicero"), and Dr. John Schweiger ("Dr. Schweiger") to demonstrate those breaches were the proximate cause of Perryman's death.

{¶ 7} The Cleveland Clinic's motion in limine sought to preclude Miles from introducing evidence, eliciting testimony, and making arguments relating to the eight alleged breaches. Specifically, the Cleveland Clinic argued no expert testimony had been identified by Miles that stated the eight alleged breaches proximately caused Perryman's death. The Cleveland Clinic further argued that absent proximate cause testimony, the eight alleged breaches were irrelevant and inadmissible. And even assuming the evidence was relevant, the Cleveland Clinic

argued any probative value of the testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury and, accordingly, the evidence should be excluded pursuant to Evid.R. 403(A).

{¶ 8} In her brief in opposition to the Cleveland Clinic's motion in limine, Miles cited to the expert reports of Drs. Cicero and Benjamin and argued the doctors would explain to the jury that the Cleveland Clinic's failure to meet the nursing standards of care caused Perryman's death. Miles later filed a supplemental opposition brief arguing Tomczak's standard-of-care testimony would address only two of the eight alleged breaches: (1) failure to properly document and (2) failure in medication administration.[2] After hearing arguments from both parties, the trial court granted the Cleveland Clinic's motion in limine thereby temporarily restricting Miles from introducing evidence on the two alleged breaches still at issue.

{¶ 9} Also relevant to this appeal is Miles's motion in limine seeking to prevent the defendants from referencing bed bugs and requesting the redaction of any documents or transcript that mentioned bed bugs. Dr. Wallen opposed the motion and argued the testimony was relevant because Perryman's home life and family dynamics were relevant to the issue of damages in her wrongful-death claim. Dr. Wallen also argued a significant issue was the delay by Perryman's family to seek treatment for Perryman's pneumonia and sepsis while Perryman remained in her bedroom for seven days unable to eat and/or relieve phlegm from her chest. Dr.

---

[2] The trial court did not rule on the motions in limine prior to trial, and Miles filed her supplemental opposition brief at the start of trial, on December 9, 2024.

Wallen argued the testimony that Perryman remained in her bug-infested bedroom for seven days prior to her admission to South Pointe gave context to the objective delay in treatment. The trial court denied Miles's motion.

**Voir Dire**

{¶ 10} The matter proceeded to trial on December 9, 2024. In open court, Miles withdrew her loss-of-consortium claim.

{¶ 11} During voir dire, the trial court and counsel questioned the prospective jurors, and several potential jurors were removed for cause and pursuant to peremptory challenges. The removal of juror Nos. 6, 11, 14, 15, 16, and 22 are relevant to this appeal.

{¶ 12} Juror No. 6 underwent the following questioning during voir dire:

THE COURT: Well, good. Anything that you have heard so far that would cause you to feel like you would not be able to be fair and impartial in this case?

JUROR 6: No.
. . .

PLAINTIFF'S COUNSEL: Okay. Thank you. All right. Does anybody here, just raise your hand, but does anybody think that the moon landing was faked or that the earth the flat? Anybody? All right. Anybody here ever had bed bugs in their house? Or if you don't want to admit it, that's fine, but anybody know anything about bed bugs?

JUROR 6: Number 6. I work for Cuyahoga County Metropolitan Housing Authority, and bed bugs are rampant.

PLAINTIFF'S COUNSEL: So you're aware it has nothing to do with how clean a place is.

JUROR 6: No, doesn't have anything to do with that.

PLAINTIFF'S COUNSEL: All right. So I only bring this up because when — so Sydney was taken by ambulance to the emergency room, and when the ambulance picks Sydney up, so Robyn and Sydney at the time were living in an apartment building. They didn't own it. They didn't control it. But there was a bed bug outbreak in the apartment building, and there was — there were bed bugs at the time coincidentally when they picked up Sydney.

Is anybody going to hold that against Robyn or Sydney that there were bed bugs in the apartment building? There's not going to be evidence, no evidence in any of the Cleveland Clinic records about bed bugs or — okay.
. . .

Tr. 54-55, 172-173. Ultimately, Dr. Wallen's counsel excused juror No. 6 with a peremptory challenge.

{¶ 13} During voir dire, juror No. 11 initially stated that she would not have any difficulty rendering a fair and impartial verdict and later answered that she may "possibly" favor the doctor or hospital in a lawsuit because of her husband, brother, and nephew working in the medical profession, and it would be difficult for her to be fair and impartial. Juror No. 11 further stated:

PLAINTIFF'S COUNSEL: Okay. So if somebody tries to change your mind, you're not going to change your mind about that. That's your —

JUROR 11: I might be able to do that, but I think I do have some inclination to understand their jobs and how they perceive them.

PLAINTIFF'S COUNSEL: But you understand starting out at the beginning of the case, we need somebody that can commit that that won't affect them. And what you're telling me is you can't be sure.

JUROR 11: That's correct.

PLAINTIFF'S COUNSEL: You feel at this point leaning toward the medical side and the defense side of the case —

JUROR 11:  Yes.

PLAINTIFF'S COUNSEL:  — based on your close relationship with people in the medical field?

JUROR 11:  Yes.

Tr. 136-137.

**{¶ 14}** Defense counsel subsequently had this exchange with juror No. 11:

DR. WALLEN'S COUNSEL:  Juror Number 11, I wanted to follow up with you.  I know that you have had experiences over the years that probably make you have different things in the back of your mind in a lawsuit like this.  As we're sitting here right now, do you believe that you can be fair to both sides?

JUROR 11:  Yes.

DR. WALLEN'S COUNSEL:  And you believe you can follow the law that the Judge will give to you, correct?

JUROR 11:  I do.

Tr. 264.

**{¶ 15}** Plaintiff's counsel sought to remove juror No. 11 for cause because the juror stated she could not be fair and unbiased.  The trial court denied plaintiff counsel's motion, and counsel used a peremptory challenge to remove the juror.

**{¶ 16}** Juror No. 14, a practicing dentist, indicated she was previously sued for dental malpractice — which she described as a "very scary" and "frightening" experience — but stated that lawsuit did not impact her ability to provide a fair and impartial decision at trial. Tr. 45.  Juror No. 14 voiced additional thoughts about her past medical-malpractice lawsuit and her financial concerns related to the current trial:

PLAINTIFF'S COUNSEL: Okay. And I hope we can be open and honest with each other. I'm representing Robyn bringing a medical negligence claim, and you, having been on the other side of that, do you think you would have feelings about that?

JUROR 14: To be honest, yeah, I have something in the back of my mind about that, but just because of how I felt when the case was brought against me.

PLAINTIFF'S COUNSEL: Do you think that, you know, hearing this, going through this over the next two weeks, those feelings are going to be brought to the surface?

JUROR 14: Not that — I mean, no, it wasn't like so, so traumatic or anything like that.

. . .

PLAINTIFF'S COUNSEL: And then Juror Number 14, you said it would be pose a financial hardship on you?

JUROR 14: Yes, correct.

PLAINTIFF'S COUNSEL: To be here for two weeks. And that's because you have your own business?

JUROR 14: Yes, I'm in solo practice, and if I'm not there we can't produce and therefore I have three employees that can't get paid.

PLAINTIFF'S COUNSEL: And I assume that if we're here, the longer we're here the more distracted you're going to be? I mean, I get that, I run my own business too.

JUROR 14: Yes.

PLAINTIFF'S COUNSEL: Okay. Sounds like it would make it hard for you, not just from financial hardship part but just being able to focus on what's going on in the courtroom and the medical testimony.

JUROR 14: Correct.

Tr. 130, 165-166.

{¶ 17} Plaintiff's counsel requested dismissal for cause of juror No. 14 because (1) she is a medical doctor and (2) she indicated serving for two weeks on the jury would impose a substantial financial hardship on her dental practice. The Cleveland Clinic also sought dismissal for cause because of financial hardship. The trial court stated there were a number of potential jurors who were financially impacted by serving during a lengthy trial and it did not find that reasoning supported a dismissal for cause. The trial court denied plaintiff's counsel's request to remove juror No. 14 for cause, and plaintiff's counsel dismissed the juror pursuant to a peremptory challenge.

{¶ 18} Juror No. 15 initially indicated he would render a fair and impartial verdict and his opinion would not be influenced by his sister-in-law's employment as a nurse with the Cleveland Clinic. The subsequent exchange occurred between juror No. 15 and plaintiff's counsel:

> JUROR 15: I'd like to clarify to the Court that my sister-in-law is employed by the Cleveland Clinic Avon Hospital. She is manager of nursing quality there. I can't say that I would feel biased towards the Cleveland Clinic, but I'd be more so worried about repercussions if it went the other way that the Clinic lost and went against her.
>
> PLAINTIFF'S COUNSEL: So are you saying that you would feel like that would sway you in deciding the case when you listen to the evidence? You might feel like one side might be more persuasive or more right than our side?
>
> JUROR 15: I would say no. The evidence would have to come out and give who is right and who is wrong.
>
> PLAINTIFF'S COUNSEL: Okay. But I thought you said you had some concern about because of what your sister-in-law does and who she

works for, you would have some concern about returning a verdict against the Clinic?

JUROR 15: There would be possible in the back of my mind, because like I said, I would hate to see repercussions. Confident that it would not happen, but —

PLAINTIFF'S COUNSEL: Can't be totally sure.

JUROR 15: Correct.

PLAINTIFF'S COUNSEL: So there's some doubt in your mind that that would be a concern in this case, and you would feel like you —

COURT REPORTER: I'm sorry, can you speak up a little bit.

PLAINTIFF'S COUNSEL: Sure. So there is some doubt in your mind whether you could return a verdict against the Cleveland Clinic because of where your sister-in-law works and your relationship, fair?

JUROR 15: I would say that's a fair statement.

PLAINTIFF'S COUNSEL: And even though you would try to be fair, you can't guarantee us as you sit here today that you could be fair.

JUROR 15: Correct.

Tr. 139-141. Plaintiff's counsel sought a for-cause dismissal of juror No. 15 because the juror stated he could not be fair and impartial. Counsel for the Cleveland Clinic did not oppose the for-cause challenge, and counsel for Dr. Wallen argued in opposition that the juror did not state he could not be fair and impartial and the juror's concerns related to nonexistent repercussions. The trial court overruled plaintiff's challenge for cause of juror No. 15, and plaintiff's counsel excused that juror with a peremptory challenge.

{¶ 19} The following colloquy occurred with juror No. 16:

THE COURT:  Any issue sitting on a jury panel where the Cleveland Clinic is a named defendant?

JUROR 16:  No, I don't have an issue with that.

THE COURT:  But?

JUROR 16:  But you asked about two weeks to somebody at the beginning and I'm like kind of in transition from leaving Hanger Clinic to go to Metro Health, so I don't know if I can actually be available that long.

THE COURT:  And tell me when is that transition supposed to happen?

JUROR 16:  I'm supposed to turn in my notice on Friday.

THE COURT:  Okay. Do they know yet?

JUROR 16:  No.

THE COURT:  We won't tell them.  All right.  We'll keep that in mind.

. . .

PLAINTIFF'S COUNSEL:  Okay.  Thank you.  Anybody else?

JUROR 16:  I had my mammogram at Marymount.  That was a bad experience that required me to have surgery, so it wasn't — it wasn't a good experience.

PLAINTIFF'S COUNSEL:  I'm sorry, it wasn't what?

JUROR 16:  A good experience.

PLAINTIFF'S COUNSEL:  Okay.  Do you think you would still be — is there anything about that that makes you think you wouldn't be fair and impartial in this case?

JUROR 16:  I can't say because I don't know the evidence of this case, but just speaking off that alone, I mean, sitting here and discussing everything is obviously bringing up memories, so —

PLAINTIFF'S COUNSEL:  Right.  Well, we're picking the jury today or tomorrow morning, and then you're going to hear the evidence.  So you have to be sure.  Are you saying as you sit here today you can't be sure it's not going to affect you or can you put that aside?

JUROR 16:  I can try to put it aside, but I can't say that I would be able to.

PLAINTIFF'S COUNSEL:  Okay.  Fair enough. . . .

. . .

CLEVELAND CLINIC'S COUNSEL:  Does that experience affect your ability to be fair and impartial in this case?

JUROR 16:  No.

CLEVELAND CLINIC'S COUNSEL:  So you can set your negative experience with the Cleveland Clinic aside and listen to the testimony and evidence in this courtroom and judge it fairly and impartially?

JUROR 16:  Yeah.

CLEVELAND CLINIC'S COUNSEL:  You look like you hesitated.

JUROR 16:  I mean —

CLEVELAND CLINIC'S COUNSEL:  Is that bad experience sitting —

JUROR 16:  It's taking me right there now because we're talking about it.

CLEVELAND CLINIC'S COUNSEL:  Is it going to stay in the back of your mind throughout the trial in this case?

JUROR 16:  I can't say no, but I'm trying to be objective.

CLEVELAND CLINIC'S COUNSEL:  Okay.  Well, just being honest with us, do you feel that you can be fair and impartial and treat both — to both sides, can you treat both sides fairly?

JUROR 16:  Oh, I can definitely treat both sides fairly.

CLEVELAND CLINIC'S COUNSEL: So nothing about that experience you feel is going to affect your ability to be fair and impartial?

JUROR 16: No.

. . .

DR. WALLEN'S COUNSEL: Juror Number 16, you answered some questions yesterday about having I believe a mammogram at the Cleveland Clinic and that you weren't happy after that. Do you feel like as we're sitting in the courtroom you can be completely not biased against the Cleveland Clinic and the people that took care of this patient with your experience in the back of your mind?

JUROR 16: I guess I can try.

DR. WALLEN'S COUNSEL: So I need you to give me — if you can't say — let me do it this way. You can't tell me as we're sitting right now that you can be unbiased, correct?

JUROR 16: Correct.

Tr. 66-67, 148-149, 232-233, 265. Counsel for the Cleveland Clinic and Dr. Wallen sought to remove juror No. 16, for cause, because she did not commit to being fair and impartial and the juror was concerned about terminating her employment at the end of the week. Over plaintiff's counsel's objection to striking an African-American juror because of financial hardship, the trial court granted the Cleveland Clinic's motion to strike juror No. 16 for cause.

{¶ 20} Juror No. 22 stated she would be a fair and impartial jurist, and indicated she worked with individuals who have Down syndrome. Juror No. 22 also stated she worked the third shift:

JUROR 22: So with me, I work a third shift, and I know you guys said the call time would be like 8:30. That's usually my off time when I get off of work. So depending on if we have good staffing, that would

determine if I'm able to come in every day. But I haven't [given] them the schedule of how long I would be here. They know as of a few days for now, but once I know how long I might be able to get it arranged to where they have somebody to fill in my spot. Other than that, I'm not really sure.

Tr. 168-169.

{¶ 21} Juror No. 22 was considered as an alternate juror. Upon the defense counsel's use of a peremptory challenge to the juror, plaintiff's counsel raised a *Batson* objection:

> CLEVELAND CLINIC'S COUNSEL: We'll excuse number 22, Your Honor.
>
> PLAINTIFF'S COUNSEL: We object to that as two of the African-American jurors have already been struck, so I think – just want to put the objection on the record since our client is African-American.
>
> DR. WALLEN'S COUNSEL: For the record, I want to place the race neutral reasons on the record. There was no challenge originally, but for number 6, she talked about bed bugs is something that wasn't a big deal to her, and she also had a bad experience in a hospital.
>
> Juror Number 22 works with children with Down's and the decedent had Down's, and is going to work all night and come in here. And those are the reasons, race neutral reasons.
>
> CLEVELAND CLINIC'S COUNSEL: We would join that with regard to number 22, Your Honor.
>
> THE COURT: Thank you. [The] objection [of Plaintiff's counsel] is noted . . . . The challenge is accepted. Our alternate jurors will be numbers 24 and 25.

Tr. 290.

{¶ 22} After impaneling the jury, the matter proceeded to trial. Miles introduced medical expert testimony from Dr. Schweiger, Dr. Cicero, Dr. Benjamin,

and Tomczak, and the defendants presented testimony in support of their defense. At the close of trial, the jury rendered a unanimous verdict in favor of the Cleveland Clinic and Dr. Wallen.

{¶ 23} On January 21, 2025, Miles filed a notice of appeal and now presents five assignments of error:

> Assignment of Error I:  The trial court erred by striking Juror 16, an African-American woman, for cause when that juror did not meet any criteria in O.R.C. 2313.17.
>
> Assignment of Error II:  The trial court erred by allowing Appellees to use multiple peremptory strikes against an African-American woman and without conducting the analysis required by *Batson v. Kentucky*, (1986), 476 U.S. 79, allowing Defendant-Appellees to strike all African-American women from the jury.
>
> Assignment of Error III:  The trial court erred by overruling biased jurors and Plaintiff-Appellant's challenges for cause as required by O.R.C. 2313.17.
>
> Assignment of Error IV:  The trial court excluded relevant and admissible expert standard of care testimony during trial that was properly disclosed well in advance.
>
> Assignment of Error V:  The trial court allowed the defense to tell the jury there were bed bugs in Plaintiff-Appellant's apartment building even though there was no evidence or testimony it had anything to do with any issues in the case and clearly prejudiced Plaintiff-Appellant.

{¶ 24} On July 24, 2025, this court sua sponte dismissed the appeal for lack of a final appealable order because the dismissal of Dr. Pavkov, Affinity, and DHSC did not comply with Civ.R. 41.  The parties subsequently entered a stipulation for dismissal with prejudice that conformed with Civ.R. 41, and the trial court issued a

judgment entry on August 11, 2025, that reflected the dismissal. Miles filed a motion to reinstate the appeal, and this court granted the motion on August 25, 2025.

{¶ 25} On October 3, 2025, Miles filed a motion to consolidate this matter with *Robyn D. Miles, Admr. of the Estate of Sydney Mariah Perryman, deceased v. Cleveland Clinic Health Sys. — E. Region dba S. Pointe Hosp., et al.*, 8th Dist. Cuyahoga No. 115648, which addresses the payment of expert witness fees. This court denied Miles's motion to consolidate on October 6, 2025.

{¶ 26} The parties have submitted briefs and presented oral arguments, and the case is properly before this court.

**Legal Analysis**

**I. Removal of Jurors for Cause**

**A. Standard of Review**

{¶ 27} "'We review the trial court's decision on whether to remove a juror for cause for an abuse of discretion.'" *Porach v. Cleveland Clinic Found.*, 2025-Ohio-2522, ¶ 64 (8th Dist.), quoting *State v. Lloyd*, 2021-Ohio-1808, ¶ 18 (8th Dist.), citing *State v. Smith*, 1997-Ohio-355, ¶ 61. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983); *Johnson.*

**B. Juror No. 16**

{¶ 28} Miles argues in her first assignment of error that the trial court erred when it struck juror No. 16 for cause because that juror did not satisfy the requirements of R.C. 2313.17. Further, Miles argues the removal of juror No. 16, an African-American woman who was the same race and gender as Miles and Perryman, exacerbated the court's erroneous order.

{¶ 29} R.C. 2313.17 governs challenges of jurors for cause, and R.C. 2313.17(B) lists nine "good cause" challenges or situations when counsel may challenge a juror for cause. One of the "good cause" challenges occurs if a juror's answers during voir dire disclose that he or she cannot be a fair and impartial juror or will not follow the law as given by the court. R.C. 2313.17(B)(9). Additionally, a juror may be removed pursuant to R.C. 2313.17(D):

> (D) In addition to the causes listed in division (B) of this section, any petit juror may be challenged on suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render the juror at the time an unsuitable juror. The validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased.

{¶ 30} "The determination of whether a juror is impartial or biased involves a judgment of credibility, which may not be apparent from the record on appeal. Therefore, a reviewing court will defer to the trial judge who sees and hears the juror." *Hunt v. E. Cleveland*, 2019-Ohio-1115, ¶ 37 (8th Dist.).

{¶ 31} Here, juror No. 16, who worked for a contractor for the Cleveland Clinic, initially stated she would have no problem sitting on a jury panel where the

Cleveland Clinic was a named defendant. Juror No. 16 then voiced concerns about serving as a juror for two weeks' time since she planned to provide notice of resignation to her employer at the end of the first week of trial. Additionally, juror No. 16 shared that she previously endured a "bad experience" at a Cleveland Clinic facility that required her to undergo surgery; juror No. 16 stated she would "try to put [that incident] aside, but [she couldn't] say that [she] would be able to." Tr. 149. Upon further questioning, the juror stated that prior experience would not affect her ability to render a fair and impartial verdict but then provided conflicting testimony:

> DEFENSE COUNSEL: So I need you to give me — if you can't say — let me do it this way. You can't tell me as we're sitting right now that you can be unbiased, correct?
>
> JUROR NO. 16: Correct.

Tr. 265.

{¶ 32} Defense counsel sought to remove juror No. 16, for cause, on the grounds that she could not commit to being fair and impartial since her own negative experiences with the Cleveland Clinic would be in the back of her mind throughout the trial. Defense counsel also stated juror No. 16 was concerned about resigning from her job while on jury duty. Plaintiff's counsel objected to the motion and argued that financial hardship was not a reason to strike a juror; the objection did not address the juror's ability to act fairly and impartially. The court excused juror No. 16 stating, "She indicated multiple times that she could not be fair and impartial." Tr. 282.

{¶ 33} The record shows that the Cleveland Clinic established the existence of facts supporting a valid challenge under R.C. 2313.17(B)(9) and (D) — juror No. 16's inability to serve as a fair, impartial, and unbiased juror — which required her automatic disqualification. Additionally, where juror No. 16 gave contradictory responses, we defer to the trial court's determination that the juror could not be fair, impartial, or unbiased. *State v. Group*, 2002-Ohio-7247, ¶ 66, quoting *State v. Jones*, 2001-Ohio-57, ¶ 17 ("[I]t is for the trial court to determine which answer reflects the juror's true state of mind."). The trial court did not abuse its discretion when it granted defense counsel's motion to excuse juror No. 16 for cause and, accordingly, the first assignment of error is overruled.

## C. Juror Nos. 11, 14, and 15

{¶ 34} For ease of discussion, we will address the remaining assignments of error out of order.

{¶ 35} In her third assignment of error, Miles argues the trial court erred when it denied her motion to strike juror Nos. 11, 14, and 15 for cause. Miles further argues that because the trial court denied Miles's request to strike the jurors for cause, she was forced to use peremptory challenges to remove the three jurors. Miles also contends the court's refusal to remove these biased jurors was compounded by the removal of all African-American women from the venire.

{¶ 36} "A trial court has considerable discretion in determining whether to remove a prospective juror for cause." *Gurley v. Nemer*, 2004-Ohio-5169, ¶ 5 (9th Dist.), citing *State v. Cornwell*, 1999-Ohio-125, ¶ 19. "The trial court has the benefit

of observing the prospective jurors' demeanor and non-verbal characteristics, which are important factors in weighing potential bias, prejudice, and sincerity." *Jackson v. Sunforest OB-GYN Assocs.*, 2008-Ohio-480, ¶ 8 (6th Dist.), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

### 1. Juror No. 11

{¶ 37} At trial, plaintiff's counsel sought to remove juror No. 11 for cause because she stated she could not be fair and unbiased. Juror No. 11 provided contradictory responses, stating she could serve as a fair and impartial juror and later stating she may "possibly" favor a doctor or hospital in a lawsuit because of her personal relationships with family members in the medical profession. However, juror No. 11 testified that she might be able to change her mind and, unequivocally, stated she could be fair to both sides and follow the law provided by the judge. Juror No. 11's answers to the voir dire questions ultimately showed that she would be fair and impartial and follow the law as instructed by the judge, and we defer to the trial court's assessment of juror No. 11's contradictory statements. Based upon the record before us and giving deference to the trial court, we cannot say that the trial court abused its discretion in denying Miles's challenge of juror No. 11 for cause.

### 2. Juror No. 14

{¶ 38} Juror No. 14 stated that a prior dental malpractice lawsuit filed against her did not impact her ability to provide a fair and impartial decision. However, juror No. 14 indicated that being absent from her solo dental practice for two weeks because of the ongoing trial would adversely impact her financially and

such concerns would distract her from the trial proceedings. Plaintiff's counsel requested dismissal for cause of juror No. 14 because (1) she is a medical doctor and (2) she indicated serving for two weeks on the jury would impose a substantial financial hardship on her dental practice. The Cleveland Clinic also sought dismissal for cause because of financial hardship. The trial court denied plaintiff's counsel's request to remove juror No. 14 for cause, and plaintiff's counsel dismissed the juror pursuant to a peremptory challenge.

{¶ 39} This court has found that a juror's specialized knowledge and experience may "lend wisdom to the jury" and is not a basis for automatic dismissal from the venire. *Cordova v. Emergency Professional Servs.*, 2017-Ohio-7245, ¶ 35 (8th Dist.). A jury member's role as a medical provider should not, in and of itself, act as an automatic exclusion of a potential juror. *Sowers v. Middletown Hosp.*, 89 Ohio App.3d 572, 582 (12th Dist.) ("[A]utomatic exclusion of nurses and other medical personnel from medical malpractice juries is not within the realm of R.C. 2313.42.").[3] Thus, juror No. 14's employment as a dentist did not support her removal from the jury panel for cause.

{¶ 40} When analyzing a trial court's ruling on the removal of a juror, we look at the entirety of the juror's responses. *Cordova* at ¶ 38 (Legal precedent permits a reviewing court's consideration of all voir dire answers provided by a juror.). Viewing juror No. 14's responses to all of the voir dire questions

---

[3] Effective May 22, 2012, R.C. 2313.42 was renumbered as R.C. 2313.17.

demonstrates that the juror's financial concerns regarding her medical practice may have distracted her during trial but the statements did not indicate the juror's inability to render a fair and impartial verdict and follow the law provided by the court. Additionally, the trial court stated there were a number of potential jurors whose finances were adversely impacted by serving during a lengthy trial and she did not find that reasoning supported a dismissal for cause.

{¶ 41} In deference to the trial court who observed the prospective juror's demeanor and nonverbal characteristics and in consideration of the record, we cannot say the trial court's denial of Miles's challenge of juror No. 14 for cause was an abuse of discretion.

### 3. Juror No. 15

{¶ 42} Plaintiff's counsel sought a dismissal for cause of juror No. 15 because the juror stated he could not be fair and impartial. Counsel for the Cleveland Clinic did not oppose the for-cause challenge, but counsel for Dr. Wallen argued in opposition that the juror did not state he could not be fair and impartial and the juror's concerns related to nonexistent repercussions. The trial court overruled plaintiff's challenge for cause of juror No. 15, and plaintiff's counsel excused that juror with a peremptory challenge.

{¶ 43} Juror No. 15 initially stated that the evidence would demonstrate how the case should be decided and he would not be influenced by his sister-in-law's employment with the Cleveland Clinic. On further questioning, even though the juror thought it unlikely a verdict in favor of Miles would negatively impact his

sister-in-law's employment, such a concern prevented juror No. 15 from guaranteeing he could be fair. Considering juror No. 15's conflicting statements, we defer to the trial court who observed the potential juror's demeanor and nonverbal characteristics during voir dire, and we will not now challenge the propriety of the trial court's determination.

{¶ 44} We also note that Miles used peremptory challenges to remove juror Nos. 11, 14, and 15 from the panel. There is no evidence in the record that the failure to use challenges for cause unfairly prejudiced Miles's use of peremptory challenges. *Hinkle v. Cleveland Clinic Found.*, 2004-Ohio-6853 (8th Dist.), quoting *State v. Bedford*, 39 Ohio St.3d 122, 129 (1988); *see also Sowers v. Middletown Hosp.*, 89 Ohio App.3d 572, 582 (12th Dist. 1993) ("[W]e find it difficult to understand how appellants were prejudiced by the court's refusal to apply their automatic exclusion, as neither the two nurses nor the medical-records employee sat on the jury in the present case.").

{¶ 45} The trial court found the statements by juror Nos. 11, 14, and 15 indicated their ability to serve as fair, impartial, and unbiased jurors and to follow the law provided by the court. The trial court did not abuse its discretion when it overruled plaintiff's counsel's motions to strike juror Nos. 11, 14, and 15 for cause and, thus, Miles's third assignment of error is overruled.

{¶ 46} Miles's arguments related to the racial makeup of the jury pool will be addressed below in response to the second assignment of error.

## II. *Batson* Challenge

{¶ 47} In the second assignment of error, Miles argues the trial court erred when it allowed the removal of prospective juror Nos. 6, 16, and 22 for racially motivated purposes and such acts violated *Batson v. Kentucky*, 476 U.S. 79 (1986). We disagree.

{¶ 48} "A trial court's finding of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous.'" *Martin v. Nguyen*, 2005-Ohio-1011, ¶ 9, quoting *State v. Hernandez*, 63 Ohio St.3d 577, 583 (1992).

{¶ 49} In *Batson*, the U.S. Supreme Court set forth a three-part test to determine whether a peremptory strike was racially motivated. The *Batson* test applies in both criminal and civil settings. *Martin* at ¶ 6, citing *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991). The Ohio Supreme Court described the *Batson* analysis as follows:

> First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. *Id.* at 96, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently "discriminating" device, permitting ""those to discriminate who are of a mind to discriminate.""" *State v. Hernandez* (1992), 63 Ohio St. 3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S. Ct. 279, 121 L. Ed. 2d 206. The litigant must then show an inference or inferences of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority

venire members is present.  *See Batson* at 96-97,106 S. Ct. at 1723, 90 L. Ed. 2d at 88.

*Hicks v. Westinghouse Materials Co.*, 1997-Ohio-227, ¶ 13.

{¶ 50} Once the party opposing the peremptory challenge establishes a prima facie case exists, the striking party must articulate a race-neutral explanation "related to the particular case to be tried." *Id.* at ¶ 14, quoting *Batson*, 476 U.S. 79 at 98.  A simple affirmation of general good faith will not suffice but the explanation "need not rise to the level justifying exercise of a challenge for cause." *Id.* at 97. "The critical issue is whether discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely a pretext for exclusion on the basis of race." *Hicks* at ¶ 14, citing *Hernandez v. New York*, 500 U.S. 352, 363 (1991).

{¶ 51} "Last, the trial court must determine whether the objecting party has proven purposeful discrimination." *Hicks* at ¶ 15, citing *Purkett v. Elem*, 514 U.S. 765, 767 (1995).  The trial judge must assess the persuasiveness and credibility of the justification offered by the striking party and determine whether to believe counsel's race-neutral explanation.  *Hernandez* at 365.

> "There will seldom be much evidence bearing on [this] issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge."  *Id.*  Because the trial judge's findings in this step "'largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.'"  *Hernandez*, 500 U.S. at 365, 111 S. Ct. at 1869, 114 L. Ed. 2d at 409, quoting *Batson* at 98, 106 S. Ct. at 1724, 90 L. Ed. 2d at 89, fn. 21.  Thus, we cannot overturn the trial court's finding on the issue of discriminatory intent "unless convinced that its determination was clearly erroneous." *Id.* at 369, 111 S. Ct. at 1871, 114 L. Ed. 2d at 412.

*State v. Gowdy*, 2000-Ohio-355, ¶ 24.

{¶ 52} At the end of voir dire, defense counsel moved to strike alternate juror No. 22, and the following colloquy occurred:

> PLAINTIFF'S COUNSEL: We object to that as two of the African-American jurors have already been struck, so I think — just want to put the objection on the record since our client is African-American.
>
> DEFENSE COUNSEL: For the record, I want to place the race neutral reasons on the record. There was no challenge originally, but for number 6, she talked about bed bugs is something that wasn't a big deal to her, and she also had a bad experience in a hospital. Juror Number 22 works with children with Down's and the decedent had Down's, and is going to work all night and come in here. And those are the reasons, race neutral reasons.
>
> DEFENSE COUNSEL: We would join that with regard to number 22, Your Honor.
>
> THE COURT: Thank you. Your objection is noted, [plaintiff's counsel]. The challenge is accepted.

Tr. 290. The trial court stated it "accepted" the challenge, but in actuality the court rejected the *Batson* challenge.

{¶ 53} As an initial matter, the trial court neither conducted a hearing nor made findings on the record relating to Miles's *Batson* challenge, and the court was not required to do so. The trial court must afford the parties a reasonable opportunity to make a record, and the court may then state its ruling ""on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge."" *State v. Thompson*, 2014-Ohio-4751, ¶ 63, quoting *State v. Frazier*, 2007-Ohio-5048, ¶ 98, quoting *Messiah v. Duncan*, 435

F.3d 186, 198 (2d Cir. 2006). As required, the trial court heard plaintiff's counsel's arguments on the *Batson* challenge and defense counsel's race-neutral reasoning to remove the jurors in question before rendering its decision to deny the *Batson* challenge.

{¶ 54} Additionally, the *Batson* test applies only to peremptory strikes and not challenges for cause. *State v. Adams*, 2015-Ohio-3954, ¶ 158. Thus, the dismissal of juror No. 16, who was struck for cause, is irrelevant to the *Batson* analysis, and we will analyze Miles's *Batson* challenge as to juror Nos. 6 and 22.

{¶ 55} Although it can be presumed that juror Nos. 6 and 22 were members of a cognizable class to which plaintiff belonged, Miles failed to argue, much less demonstrate, "any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their" race. *State v. Stalder*, 2023-Ohio-2359, ¶ 17, citing *State v. Johnson*, 2000-Ohio-276. In order to conclude that the party opposing the peremptory challenge has demonstrated a prima-facie case of discrimination, "'[t]he trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including statements by counsel exercising the peremptory challenge, counsel's questions during [jury selection], and whether a pattern of strikes against [a cognizable gender group of jury-panel] members is present.'" *Id.*, quoting *Hicks,* 1997-Ohio-227, at ¶ 72, and *Batson*, 476 U.S. at 96-97.

{¶ 56} Miles's entire objection to the defendants' shared use of a peremptory challenge to an alternate juror was limited to plaintiff's counsel's statement that two

African-American jurors had already been struck and Miles is African-American. In this appeal, Miles claims that a prima-facie case of discriminatory intent was demonstrated because the last peremptory challenge jointly used by the defendants "removed all African American women" from the prospective panel. No other argument was presented, and no other context was given.

{¶ 57} The Ohio Supreme Court has rejected such as a basis to establish a prima-facie case of discriminatory use of peremptory challenges. *Stalder* at ¶ 23; *see also State v. Moore,* 2024-Ohio-1783, ¶ 20 (8th Dist.) (rejecting the argument that use of the peremptory challenges removing all black females from the prospective panel demonstrated a prima-facie case of discrimination). In that case, the moving party objected "'simply because'" the juror was of the same cognizable class as the defendant. As the Ohio Supreme Court noted, "[a]side from this comment, [defense] counsel presented no evidence to establish a prima facie case of purposeful gender discrimination. Counsel did not point to any of the prosecutor's questions during jury selection. There was no proof of a pattern of strikes against male prospective jurors in this case or historically by the prosecutor in other cases," which could give rise to an inference of discrimination. *Id.*

{¶ 58} As *Stalder* instructs, establishing a prima-facie case requires more than simply noting that the peremptory challenge was used against a member of the same cognizable class as the objecting party. Because Miles's argument was limited to the perceived shared ethnicity of Miles and the two prospective jurors, Miles did not establish a prima-facie case of discriminatory use of peremptory challenges.

{¶ 59} And even if we assume Miles's objection to defense counsel's use of peremptory strikes to remove two African-American jurors, where Miles and the deceased were African-American, met the first prong of the *Batson* test, she did not meet the remaining two prongs of the test.

{¶ 60} Satisfaction of *Batson*'s second prong depends upon the facial validity of the explanation offered by the party seeking to strike a juror. *Gowdy*, 2000-Ohio-355 at ¶ 17, quoting *Purkett*, 514 U.S. 765 at 768, quoting *Hernandez,* 500 U.S. 352 at 360. "The second step of this process does not demand an explanation that is persuasive, or even plausible." *Purkett* at 768. "'[T]he issue is the facial validity of the [striking party's] explanation.'" *Id.* "'Unless a discriminatory intent is inherent in the [striking party's] explanation, the reason offered will be deemed race neutral.'" *Purkett* at 768, quoting *Hernandez* at 360.

{¶ 61} Defense counsel stated the neutral reasoning to exclude juror No. 6 was the juror's ambivalent attitude about bed bugs and the juror's negative experience in a hospital. While juror No. 6 stated her daughter worked as a nurse and she could render a fair and impartial verdict, she conceded her mother died from cancer in 1980, after treatment by the Cleveland Clinic Foundation. Juror No. 6 also stated she was familiar with bed bugs because of her work with the Cuyahoga Metropolitan Housing Authority, and she stated she did not believe bed bugs were related to the cleanliness of the structure where they were present. Miles argues that the Cleveland Clinic's focus on bed bugs was discriminatory in nature and the intent was to show Miles and Perryman were poor and dirty. The Cleveland Clinic argued

prior to trial, in opposition to Miles's motion in limine to exclude any testimony or evidence relating to bed bugs, that information on Perryman's home life and family dynamics, including the presence of bed bugs in Perryman's bedroom where she primarily stayed the week before her death, were relevant to the issue of damages. A review of the record shows defense counsel's explanation for its peremptory challenge to juror No. 6 — which need not be persuasive or plausible but valid on its face — satisfied the second prong of *Batson*.

{¶ 62} As to juror No. 22, defense counsel argued the peremptory challenge was race-neutral. Specifically, defense counsel voiced her concerns that juror No. 22 worked with Down syndrome children and the juror, who worked the night shift, would have to report to jury duty immediately after working all night. The Cleveland Clinic's concerns that juror No. 22 may have been sympathetic to an individual born with Down syndrome or that the juror's work schedule may have adversely impacted her ability to serve as a juror during a two-week trial presented race-neutral reasoning to remove juror No. 22 from the panel.

{¶ 63} As to *Batson's* third prong, ""the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the [striking party's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'"" *Martin*, 2005-Ohio-1011, at ¶ 14, quoting *Hernandez*, 500 U.S. 352 at 365. The record is devoid of relevant facts or circumstances that give "rise to an inference of discriminatory purpose." *Batson*, 476 U.S. 79 at 94, citing *Washington v. Davis*, 426 U.S. 229, 239-242

(1976). The defense offered credible race-neutral reasons to remove juror Nos. 6 and 22 by peremptory challenge, and the trial court accepted that reasoning. Because the third prong relies upon counsel's credibility, we defer to the trial court's conclusions on this matter.

{¶ 64} The trial court's ruling on plaintiff's *Batson* challenge was not clearly erroneous, and thus, Miles's second assignment of error is overruled.

### III. Exclusion of Expert Testimony

{¶ 65} In her fourth assignment of error, Miles argues that the trial court erred when it granted the Cleveland Clinic's motion in limine to exclude portions of Tomczak's relevant and admissible expert testimony.

{¶ 66} A motion in limine is basically a request to limit or exclude evidence or testimony at trial. *State v. Winston*, 71 Ohio App.3d 154, 158 (2d Dist. 1991); *Thakur v. Health Care & Retirement Corp. of Am.*, 2009-Ohio-2765 (6th Dist). However, "'[a]n appellate court need not review the propriety of a trial court's ruling on [a motion in limine] unless the claimed error is preserved by an objection, proffer, or ruling on the record[.]'" *Gagliano v. Jihad Kaouk*, 2012-Ohio-1047, ¶ 24 (8th Dist.), quoting *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986). "[A] motion in limine has an interlocutory or tentative nature, which requires the party opposing the motion to affirmatively raise the issue at the appropriate time during the trial; otherwise, any error caused by the exclusion of the evidence is forfeited." *Jones v. Cleveland Clinic Found.*, 2021-Ohio-1095, ¶ 26 (8th Dist.).

{¶ 67} Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is generally admissible at trial whereas irrelevant evidence is not. Evid.R. 402. Rulings on the admissibility and scope of expert opinion testimony are within the trial court's broad discretion, and such rulings will be reviewed on appeal under an abuse-of-discretion standard. *Pacific Great Lakes Corp. v. Bessemer & Lake Erie R.R.*, 130 Ohio App.3d 477, 501 (8th Dist. 1998).

{¶ 68} To prove its claim of negligence by Cleveland Clinic nurses, Miles needed to demonstrate — with expert testimony — that the nursing staff's treatment failed to meet the prevailing standard of care and that the failure proximately caused the claimed injuries. *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97 (1992), paragraph one of the syllabus.[4]

{¶ 69} The trial court granted the Cleveland Clinic's motion in limine precluding the introduction of Tomczak's expert testimony that the nurses' failure to properly document and failure in medication administration constituted breaches in the nurses' standard of care.

{¶ 70} Tomczak presented trial testimony — that did not include the testimony excluded by the motion in limine — after which plaintiff's counsel made the following proffer:

---

[4] Miles brought the claim of nursing negligence against the Cleveland Clinic. Dr. Wallen was not a party to this dispute.

> Plaintiffs proffer the testimony that Karen Tomczak, R.N. would testify that the manner in which the medication was administered including removing it from the Pyxis with override breached the standard of care for nursing in this case, and so plaintiffs object to the exclusion of that testimony.

Tr. 838.

{¶ 71} The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a [forfeiture] of the issue for purposes of appeal." *Goldfuss v. Davidson*, 1997-Ohio-401, ¶ 23. The only testimony alluded to in Miles's proffer was Tomczak's statements about the administration of medication including the removal of medications from the Pyxis, which is a vault that holds medications. Thus, the only nursing-related issue preserved on appeal is the alleged breach of the administration of medication.

{¶ 72} While Miles argues on appeal that Tomczak's excluded testimony would have explained that the nurses violated the standard of care in numerous ways — including not performing a complete assessment and reassessment of Perryman; not attempting to redirect or calm Perryman; using the override function to remove Ativan and Benadryl from the Pyxis; failing to screen for sepsis; failing to attach monitors to Perryman; failing to obtain and record Perryman's vital signs; failing to record the events from the time medication was administered until Perryman stopped breathing; and improperly triaging Perryman — Miles preserved for appeal only the issue of whether the administration of medication breached the nursing standard of care. The narrow issue on appeal is whether the trial court erred when it excluded this limited testimony at trial. Any arguments related to the

nurses' alleged failure to properly document or any of the other eight alleged breaches are not subject to our review.

{¶ 73} The trial court summarily granted the Cleveland Clinic's motion in limine. The Cleveland Clinic argued, in support of its motion in limine, that no causation testimony linked the nurses' administration of medication, including an override of the Pyxis, to Perryman's untimely death. The Cleveland Clinic further argued that the issue of whether the medications should have been ordered related to the doctors' liability rather than the nurses' liability. A review of the record demonstrates no causation testimony on the administration of medication was introduced at trial thereby rendering the proposed testimony by Tomczak irrelevant. Accordingly, it was not an abuse of discretion for the trial court to exclude Tomczak's testimony that the administration of medication by the nurses, including an override of the Pyxis, proximately caused Perryman's injuries.

{¶ 74} For the foregoing reasons, Miles's fourth assignment of error is overruled.

## IV. Testimony on Bed Bugs

{¶ 75} In her fifth assignment of error, Miles argues that the trial court erred when it allowed defense counsel to tell the jury there were bed bugs in Miles's and Perryman's apartment because this testimony was irrelevant. Miles further argues that the discussion about bed bugs was clearly prejudicial to her case and the lack of probative value was substantially outweighed by the danger of unfair prejudice.

{¶ 76} As stated above, we review a trial court's decision to admit or exclude testimony for an abuse of discretion. *Pacific Great Lakes Corp.*, 130 Ohio App.3d 477 at 501.

{¶ 77} On November 21, 2024, Miles filed a motion in limine asking the court to preclude any irrelevant and prejudicial testimony on bed bugs. Miles argued the only purpose for such testimony was to portray Miles and Perryman as dirty and poor. Dr. Wallen filed a brief in opposition on December 2, 2024, and argued Perryman spent much of the week prior to her hospital admission sick and in her bedroom. Further, Dr. Wallen contended that if the jury rendered a verdict in favor of Miles, the jury would consider all factors existing at the time of Perryman's death that were relevant to determining the amount of damages to be awarded to Miles. Dr. Wallen argued that this broad consideration encompassed "the condition of Ms. Perryman's home and details of family life, as these factors might impact the assessment of damages such as loss of companionship, care, and other non-economic losses." Dec. 12, 2024 Brief in Opposition.

{¶ 78} Our review of the record shows bed bugs were first referenced by plaintiff's counsel during voir dire and again by Dr. Wallen's counsel during opening statements and briefly during Miles's cross-examination. While we question the relevance of bed bugs in Miles's and Perryman's apartment in determining potential damages against the defendants, we do not find the trial court's ruling that allowed the introduction of this testimony was unreasonable, arbitrary, or unconscionable so as to amount to an abuse of discretion.

{¶ 79} Additionally, we do not find the introduction of this testimony was unfairly prejudicial to Miles. Unfairly prejudicial evidence may be excluded at trial:

> "'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect."' *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 2001 Ohio 248, 743 N.E.2d 890, quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3.

> Because fairness is subjective, the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused. *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 2000 Ohio 275, 723 N.E.2d 1019.

*State v. Crotts*, 2004-Ohio-6550, ¶ 24-25.

{¶ 80} While Miles argues that the defense repeatedly discussed bed bugs during trial, Miles fails to cite to specific page numbers in the transcript to identify when this evidence was introduced or referenced. *See* App.R. 16(A)(7) (Appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). We cannot conclude that the few references to bed bugs, including plaintiff's counsel's own questioning during voir dire, equated to unfairly prejudicial evidence that aroused the jury's emotional sympathies, evoked a sense of horror, or appealed to the jurors' instinct to punish.

{¶ 81} For the foregoing reasons, Miles's fifth assignment of error is overruled.

{¶ 82} Judgment affirmed.

It is ordered that appellees recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

WILLIAM A. KLATT, JUDGE*

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)